MIDDLETON   S.   BORLAND,   as   Receiver,   etc.,   Respondent,   *v.* STANDARD  MARINE  INSURANCE  COMPANY,  LTD.,  Appellant.

Supreme Court, Appellate Term, First Department, June 29, 1925.

Insurance — marine  insurance — action  to  recover  cost  of  replacing starboard  paddle  shaft  of  steamboat — Inchmaree  clause  in  policy  of insurance  covered  damage  to  " hull  or  machinery  * * *  through breakage  of  shafts  or  through  any latent  defect  in  the  machinery  or hull  * * * "— shaft  found  fractured  three  months  after  issuance  of policy  though  steamboat  suffered  no  damage  which  would  cause breakage during said period — clause construed as indemnifying insured against  loss  or  damage  to  hull  or  machinery  caused  through  some latent  defect — development  of  latent  defect  is  not  damage  to  hull  or machinery  through  any  latent  defect — rule  construing  Inchmaree clause  by  English  courts  followed — plaintiff's  loss  not  covered — judgment reversed.

A  clause  in  a  marine  insurance  policy  known  as  the  Inchmaree  clause,  which indemnifies  an  insured  for  " damage  to  hull  or  machinery  through  * * * breakage  of  shafts  or  through  any  latent  defect  in  the  machinery  or  hull * * * "   covers  said  insured  against  loss or  damage  to  the  hull  or  machinery of  a  steamboat  caused  through  any  latent  defect.   However,  the  clause  does  not guarantee  that  the  machinery  of  a  vessel  is  free  from  latent  defects.   Nor  does the  insurer  undertake  by  said  clause  to  make  such  defects  good  if  they  be discovered  during  the  currency  of  the  policy.

Accordingly,  judgment  for  the  plaintiff,  in  an  action  to  recover  the  cost  of  replacing the  starboard  paddle  shaft  of  a  steamboat,  on  the  theory  that  said  fracture was  a  latent  defect,  under the  provisions  of  the  aforesaid  clause  in  a  marine

insurance policy, should be reversed where it appears that the said shaft was found fractured three months after the issuance of the policy, though the steamboat suffered no damage which could have caused a breakage during the currency of the policy, since the development of the said defect is not such damage to the hull or the machinery through any latent defect as would warrant coverage for plaintiff's loss.

Since it is desirable that the maritime law of this country and England should agree, and that decisions in cases of this kind should harmonize, this court deems the construction of the Inchmaree clause by the English courts should be followed rather than the construction of our own courts.

APPEAL by defendant from judgment of the Municipal Court, Borough· of Manhattan, Eighth District, in favor of plaintiff.

*Bigham, Englar & Jones [Forrest E. Single* and *Edward J. Keane* of counsel], for the appellant.

*Reynolds, Richards & McCutcheon [John S. Chapman, Jr.,* of counsel], for the respondent.

McGOLDRICK, J.:

Under what is known as the Inchmaree clause in an insurance policy taken out on the steamboat *Rensselaer* plaintiff has recovered the cost of replacing the starboard paddle shaft of that steamer upon the following facts:

Plaintiff is the receiver of the Hudson Navigation Company which since 1909 owned and operated the steamer *Rensselaer* on the Hudson river between New York and Albany. On or about March 4, 1924, the starboard shaft, after about fifteen years of service, was found to be fractured. Although there was testimony given as to the collision of the steamer with another vessel in June, 1923, the chief engineer of the steamer testified that she sustained no damage during the year 1923 that would have caused the breakage of the shaft; and the trial judge found that the fracture developed after December 1, 1923, on which date the policy sued on was taken out· in the defendant company, from a latent defect in the casting of the shaft, and that the loss incurred by the necessary replacement of the shaft was a loss due to a latent defect within the meaning of the clause in the policy providing that " This insurance also specially to cover (subject to the free of average warranty) loss of, or damage to hull or machinery, through the negligence of Master, Charterers, Mariners, Engineers, or Pilots, or through explosions, bursting of boilers, breakage of shafts, or through any latent defect in the machinery or hull, provided such loss or damage has not resulted from want of due diligence by the Owners of the Ship, or any of them," etc. Judgment was accordingly given in favor of the plaintiff for the cost of replacing the shaft.

The above-mentioned clause quoted from plaintiff's policy is what is known as the Inchmaree clause, for the reason that it was first inserted in marine policies as a result of the decision of the House of Lords, reversing the Court of Appeal, in the *Inchmaree* case (*Thames & Mersey Marine Insurance Co.* v. *Hamilton, Fraser & Co.*, L. R. 12 App. Cas. 484). In that case the valve of a donkey engine on board the *Inchmaree* got out of order, and in consequence while the engine was being used to pump water into the boilers the air chamber of the donkey pump was damaged, and the House of Lords held that the damage was not recoverable from the underwriter. The Inchmaree clause was introduced to extend the operation of the policy to risks of the same or similar type to that which had occurred in the *Inchmaree* case.

The House of Lords decided the *Inchmaree* case in 1887, and the first reported decision construing the Inchmaree clause seems to have been that in *Cleveland & B. Transit Co.* v. *Insurance Company of North America*, decided by Judge ADAMS in the District Court for the Southern District of New York (115 Fed. 431). In that case the vessel was a new vessel constructed by a builder of the best reputation. At the end of one of her first voyages the engine bed plate was found to be cracked, and it subsequently became necessary to replace it. The injury was due to a latent defect in the casting not discoverable until it was broken up, which the evidence tended to show was brought to the surface, fracturing the plate, by an unusual shock to the engine caused by a small quantity of water getting into the cylinders.

In deciding in favor of the plaintiff the court said (p. 436): "It would seem that under the English rule, recovery would be allowed in a case of this kind, and when the origin of the [Inchmaree] clause is considered and its adoption in this country, without alteration in any particular, that a similar liability would follow, unless there is something in the policy of our law which would create a difference. * * * The fact of water getting into the cylinder was but a slight accident and indicates that the loss was practically due to the inherent weakness caused by the cold shut. Nevertheless, as I find that the policy attached, it seems clear that the loss is directly within its terms, providing that the insurance should cover loss or damage to the hull or machinery through any latent defect."

The rule laid down by the English cases construing the Inchmaree clause, and which were not decided until after the decision of Judge ADAMS in the *Cleveland* case, is not in accord with the view expressed by the American judge.

In *Oceanic Steamship Co.* v. *Faber* (11 Com. Cas. 179) it appeared that in 1891 a new end was welded onto the tail shaft of the steam-

ship *Zealandia.* That weld caused a flaw in the shaft. In 1900 the shaft was drawn and passed by Lloyd's surveyor. The flaw developed into a crack so as to become visible on the surface of the shaft some time between April, 1900, and October, 1902, but so long as the shaft was in place could not be discovered. In October, 1902, the shaft was drawn and the crack was discovered. The shaft was condemned and was replaced by a new shaft. In deciding that the cost of replacing the shaft was not recoverable, WALTON, J., said (11 Com. Cas. 185): " That fracture having been found out during the currency of the policy, of which the defendant is the underwriter, the question is: Is the defendant liable to indemnify the plaintiffs in respect of the expenses they have been put to in replacing the shaft? To answer that, I have to construe the clause. It seems to me quite plain that the effect and sense of this clause is not that the underwriters guarantee that the machinery of the vessel is free from latent defects, or undertake, if such defects are discovered during the currency of a policy, to make such defects good. It is plain that that is neither the intention of those who drew this clause, nor is it the sense of the clause itself if reasonably read and reasonably construed. The underwriters agree to indemnify the owner against any loss of or damage to the hull or machinery through any latent defect, so that a claim does not fall within the clause unless there is loss of or damage to hull or machinery or some part of the hull or machinery, and there is no claim unless that damage has been caused through a latent defect, or through one or other of the causes that are mentioned in the clause — in this particular case through a latent defect. Therefore there must be a latent defect causing loss of or damage to the hull or machinery, and causing that loss of or damage to the hull or machinery, during the currency of the policy under which the claim is made. If those conditions are fulfilled, the underwriters are liable to indemnify the owners in respect of that loss or damage. It seems to me, that the loss or damage here is the fracture, the crack. Was that caused in consequence of a latent defect? There was an imperfect welding causing a flaw in the shaft, the flaw being the imperfection of the joining of two pieces which were welded together; that imperfect welding or, in other words, that flaw, did not become visible on the surface, until some time between April, 1900, and October, 1902. That is the inference of fact which I draw from the evidence. The crack which is the damage, the only damage which is proved, is really nothing but the development of the flaw — that is of the latent defect. In my opinion, such development of a latent defect is not ' damage to the machinery through a latent defect.' In such a

case I think the damage is not damage caused by the latent defect, but is the latent defect itself and nothing more; a latent defect becoming patent is all that has happened, and it seems to me that the latent defect becoming patent is not within the words of this clause ' damage to the machinery through a latent defect.' "

The above views of Walton, J., were expressly approved by the King's Bench Division in *Hutchins Bros.* v. *Royal Exchange Assurance Corporation* (L. R. [1911] 2 K. B. Div. 398, 408). In a concurring opinion in the latter case Fletcher Moulton, L. J., said (pp. 410, 411): " It is suggested that this was a ' loss of or damage to hull through a latent defect in the hull ' within the meaning of the Inchmaree clause. It was in my opinion nothing of the kind. It was not loss or damage caused by a latent defect, but a latent defect itself. To hold that the clause covers it would be to make the underwriters not insurers, but guarantors, and to turn the clause into a warranty that the hull and machinery are free from latent defects, and, consequently, to make all such defects repairable at the expense of the underwriters. There are no words in the clause which warrant such an interpretation. The fact that it begins with the word ' insurance ' negatives, in my opinion, the possibility of its being so interpreted."

An illustration of the kind of loss which is recoverable under the Inchmaree clause is referred to in Arnould on Marine Insurance and Average (Vol. 2 [11th ed.], § 861-a) as afforded by the facts of the case of *Wills & Sons* v. *World Marine Insurance, Ltd.*, reported in the Times March 14, 1911. There the insurance was on a dredger; a link of the hoisting chain of the bucket ladder gave way, the ladder and buckets fell, doing damage to the hull and machinery. There was a latent defect in the welding of the link which would otherwise have been strong enough. Scrutton, J., held that inasmuch as the link broke not from wear and tear but through the latent defect, the underwriters were liable under the clause for the damage to the hull and the machinery and for certain other consequential damage, although the latent defect had in fact existed long before the commencement of the policy.

Assuming that upon the actual facts in the *Cleveland* case, decided by Judge Adams, there is a conflict between that decision, wherein the court purports to follow the English rule, and the decisions of the English courts construing the Inchmaree clause, we are called upon to determine which rule we shall follow. In *The Eliza Lines* (199 U. S. 119, 128) Mr. Justice Holmes says: " Of course it is desirable, if there is no injustice, that the maritime law of this country and of England should agree;" and again in *Queen Insurance Co.* v. *Globe & Rutgers Fire Insurance Co.* (263 U. S. 487, 493): " There

are special reasons for keeping in harmony with the marine insurance laws of England, the great field of this business."

As it is desirable that in a case of this kind the decisions should harmonize, and as we deem the construction of the Inchmaree clause by the English courts the more persuasive, we conclude that the plaintiff's loss in this case was not covered by the policy and that it was error to award him judgment.

Judgment reversed, with thirty dollars costs, and complaint dismissed on the merits, with costs.

All concur; present, BIJUR, McGOLDRICK and LEVY, JJ.