26 N.J. Super. 145 (1953)
97 A.2d 513
AMERICAN SHOPS, INC. AND/OR MAX STRELSIN, PLAINTIFFS,
v.
RELIANCE INSURANCE COMPANY OF PHILDELPHIA, A FOREIGN CORPORATION, DEFENDANT.
Superior Court of New Jersey, Essex County Court Law Division.
Decided June 6, 1953.
*147 Mr. Graham Roskein (Mr. Harold D. Feuerstein), attorney for plaintiffs.
Messrs. Carpenter, Gilmour & Dwyer (Mr. Thomas L. Morrissey), attorneys for defendant.
DANIEL J. BRENNAN, J.S.C.
The action by the plaintiffs here is on a policy of insurance issued to them by the defendant designated as "yacht policy" No. Y 7866, wherein, for consideration of the stipulations in the policy and a premium of $328.38 the defendant insured the plaintiffs for the sum of $9,750 from the second day of July 1951 to the *148 second day of July 1952, on the vessel known as "Irene" 1946, 25' Chris Craft. The specific coverage here the subject matter of consideration appears as follows:
Page 1 of the policy, under the designation "coverages" enumerates such as "(1) Hull Insurance, as per Section A, on Page 2 of this Policy." Section "A"  Hull Insurance, indicates that the property covered is "Upon the hull, spars, sails, tackle, apparel, machinery, boats, materials, furniture, fittings, of and in the vessel hereby insured." (Underscoring by the court)
A rubber stamp endorsement on the face of the policy reads as follows: "Not liable for loss or damage to the rudder, propeller, shaft or machinery, unless caused by stranding, sinking, burning or collision with another vessel." Subject to the special terms of this policy the policy also covers "loss of and/or damage to hull or machinery through the negligence of master, mariners, engineers, or pilots, or through explosions, bursting of boilers, breakages of shafts, or through any latent defect in the machinery or hull, provided such loss or damage has not resulted from want of due diligence by the owners of the vessel, or any of them, or by the manager." This is referred to by counsel as the Inchmaree clause.
On August 9, 1951, while the policy was in effect, the yacht was damaged by explosion, i.e., "bursting of boilers, breakage of shafts, latent defect in the machinery or hull." The proof of loss filed by the plaintiff with the defendant company indicates that "As a result of said damage, the assured was forced to replace the motor at a total cost of approximately $1,300 * * * but said replacement was not as good as the motor which had been damaged, which damaged motor was worth $4,000 at the time of the loss and the latter sum is the amount the assured is entitled to and for which claim is made." The proof of loss, sworn to by the affiant on November 9, 1951, received by the defendant on November 19, 1951, was signed by Max Strelsin as the president of the American Shops, Inc. Demand for payment has been heretofore made by the plaintiffs and refused by *149 the defendant. The ad damnum clause in the complaint filed herein is in the sum of $4,000.
The defendant contends that the insurance policy issued by it did not cover the particular whereby the "Irene" was damaged. It denies that the loss was covered by any of the contingencies enumerated in the "rubber stamp" endorsement hereinbefore referred to, and that the loss in this case was occasioned by a literal disintegration of the engine caused by maldistribution of stress and strain, as a result of the separation of a counterweight from the shaft while the engine was in operation. The defendant urges further that the plaintiffs cannot maintain or recover in the present action since the plaintiffs failed to file a proof of loss within ninety days  an essential condition of the aforesaid policy of insurance. The defendant also contends that fire or explosion was not the proximate cause of the damage.
The plaintiff urges that the filing of the proof of loss within the time stipulated by the policy, was waived by the defendant and that this conduct estops the defendant from entitlement to such defense. At the trial the defendant withdrew the defense as to proof of loss.
Another aspect of the instant cause has heretofore received judicial consideration on defendant's motion for summary judgment. That application was denied. Vide: American Shops, Inc. v. Reliance Insurance Co. of Philadelphia, 22 N.J. Super. 564 (Cty. Ct. 1952). Similar motion, made before the present trial court, was also denied.
At the trial counsel stipulated on the record that there is no issue of fire in this case, i.e., the cause of action is not based upon the existence of fire as the inducing cause of the damages asserted to have been sustained. The plaintiffs also indicated that they are not claiming under the rubber stamp endorsement liability phase of the policy or that the damage was caused by any of those recited hazards.
With the consent of counsel the case was heard by the court without a jury.
A witness produced in behalf of the plaintiff testified that he was in the boat on August 9, 1951, with the plaintiff *150 Strelsin, who was in the forward cockpit operating the boat when it was on Lake Hopatcong. While the witness was speaking with Strelsin there was a terrific noise. He opened the cover on the engine to see what had happened. There were small pieces of metal that were on fire and the engine was just in pieces. There were pieces of the engine lying inside the box, some in the cockpit and some had forced the door open, the door came open and these pieces of the engine came out through that opening. The engine had come apart due to a vibration damper counterweight coming out of the side.
The counterweight had come off the crankshaft, dropped from the crankshaft, and ruined the entire engine, put holes in both sides of the engine. The witness expressed as his opinion that the damage was caused by an inherent defect in the forging of the motor counterweight (forged steel). This witness also supervised the replacement of the engine, a six-cylinder one. In that connection it appears that it was not practicable to repair the damaged engine. The plaintiff replaced it by purchasing two used engines of the same type, combining the better usable parts of each into a single unit. The parts left over after the re-installation, had a sale value of $150. The cost of the labor and additional parts that went into the installation of the converted unit, was approximately $3,000.
The plaintiff Strelsin testified as well, in substance similar to that of the witness who appeared here, that he, Strelsin, was sitting at the front of the boat where the operator usually sits in this type of craft, when he heard what he thought was an explosion, a lot of noise, a lot of grinding. He shut off his ignition immediately. He went to the hatch and found pieces of the engine scattered around and lots of oil. The boat was towed to shore. The damaged engine was eventually sold for junk for $16. Mr. Strelsin further testified that it cost him about $4,000 for the engine replacement motor and installation. The plaintiffs paid for the two used motors the sum of $1,641.83. These are the two motors that subsequently were reduced to one motor by *151 taking the usable parts from each of the motor units and building the replacement motor.
A witness produced in behalf of the defendant  this witness being engaged in the business of marine surveyor  gave opinion testimony regarding the value of the engine prior to the damage, as well as its depreciated value as of two days subsequent to the occurrence of the incident here referred to.
It should be observed that the defendant did not produce any evidence to contradict that of the plaintiffs as to the alleged cause of the damaged engine.
The issues presented for consideration by the court are two-fold: (a) Does the policy of insurance here sued upon cover a loss under the facts and circumstances here existent; (b) If the policy affords recovery for the damage, what is the amount to which plaintiff is entitled?
The primary question here for determination is the effect and interpretation of the two provisions of the policy, the clauses of which appear to be contradictory one of the other. It is urged in this posture of the cause that the stamped provisions of the policy shall control over the printed part thereof. Counsel for the plaintiffs contend that in the Inchmaree clause, coverage is expressly furnished for the damage to the machinery by latent defects. The plaintiff also urges that the designation "machinery" in the policy means "underwater machinery." The defendant suggests that it is perfectly clear that the machinery rider stamped on the face of the policy excludes any liability on the part of the insurer for damage to the engine which is caused by any risk other than the four specifically enumerated in the rider, and that the word "machinery" as used in the policy embraces the engine. The defendant contends that the aforesaid insurance policy does not cover a loss to the engine of the vessel resulting from a latent defect.
The cardinal principle pertaining to the construction and interpretation of insurance contracts is that the intention of the parties should control. If the intention of the parties can be clearly discovered, the court will give effect *152 to that intention within the sphere of its proper and legal operation and will construe accordingly the terms used in the policy, no matter how inapt, ungrammatical, or inaccurate they may appear when viewed strictly or legally. 29 Am. Jur., sec. 157. The function of the court is not to make contracts, but to enforce them and to give effect to the intention of the parties as of the time the contract was made. Moscowitz v. Middlesex Borough B. & L. Ass'n., 14 N.J. Super. 515-524 (Law Div. 1951), and cases therein cited, affirmed 18 N.J. Super. 182-187 (App. Div. 1952). Words used in an insurance policy will be construed in accordance with common usage. Jasion v. Preferred Accident Ins. Co., 113 N.J.L. 108 (E. & A. 1934). An insurance policy must be construed as a whole. Prather v. American Motorists Ins. Co., 2 N.J. 496 (1949). This court is in accord with that principle of law enunciated in Schneider v. New Amsterdam Cas. Co., 22 N.J. Super., at page 242 (App. Div. 1952), wherein appears the following:
"It is, of course, the almost universal rule that insurance contracts must wherever possible be liberally construed in favor of a policy holder or beneficiary thereof, and strictly construed against the insurer in order to afford the protection which the insured sought in applying for insurance (citing cases). If the meaning of the words employed is doubtful or uncertain, or if for any reason any ambiguity exists either in the policy as a whole or in any portions thereof, the insured should have the benefit of a favorable construction in each instance. (Citing cases.) And if the policy contains inconsistent or conflicting provisions, the courts will give effect to the provision which gives the greater benefit to the insured. Nuzzi v. U.S. Casualty Co., 121 N.J.L. 249 (E. & A. 1938). Where, from the language of the policy, it is possible to adopt either of two reasonably consistent interpretations, that construction will be adopted which permits recovery, rather than the one which would deny coverage. (Citing cases.)"
This court is of the opinion that the policy issued by the defendant, contemplates the coverage of the loss here sought to be recovered. The loss appears to be occasioned "through explosions, bursting of boilers, breakage of shafts, or through any latent defect in the machinery." This court concludes from the testimony adduced that said loss or *153 damage has "not resulted from want of due diligence" on the part of the plaintiffs or either of them.
The plaintiffs have failed to produce sufficient proof, evidential of the damage complained of. It is fundamental that the plaintiffs bear the burden of proving their damages and may not recover except insofar as that burden is sustained. Tauriello v. Aetna Ins. Co., 14 N.J. Super. 530 (Law Div. 1951); United Bond & Mortgage Co. v. Concordia Fire Ins. Co., 113 N.J.L. 28 (E. & A. 1934). Surmise and conjecture cannot be substituted for competent probative evidence. Layton v. Healy, 12 N.J. Super. 459 (App. Div. 1951). On the basis of the testimony before this court the plaintiffs are entitled to recover the sum of $1,300 as set forth in the proof of loss, together with the sum of $680 for the labor performed by one of the witnesses who appeared in the cause. From this total of $1,980 the defendant is entitled to a credit of $16 for the junked part of the engine as well as $150 which represented the value of the parts left over of the two engines (combined into one unit as hereinbefore indicated). This total amount, $166, to which the defendant is entitled as a credit as against the aforesaid sum of $1,980 ascertained to be due the plaintiff, leaves the sum of $1,814.
Judgment will be entered in favor of the plaintiffs and against the defendant in the sum of $1,814.