Max J. Wolff, Eef.
The case was tried before me by consent without a jury. Findings were waived.
This is an action upon a comprehensive all-risk insurance policy. The plaintiff is the owner of a nine-room one-family dwelling. The policy provided coverage with exclusions as follows:
“All risks of physical loss'to the property insured except as excluded:
“ Coverage C — Personal Property: Coverage C applies to all personal property owned, worn or used by the named Insured and members of the named Insured’s family of the same household, while in all situations anywhere in the world.
“ Exclusions Under Coverage C— (e) loss or damage caused by dampness of atmosphere or extremes of temperature unless such loss or damage is directly caused by rain, snow, sleet, bursting of pipes or apparatus; moth, vermin and inherent vice; damage to property (watches, jewelry and furs excepted) occasioned by or actually resulting from any work thereon in the course of any refinishing, renovating or repairing process ”.
It also contained the following stipulation:
“ This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by:
“ (i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in the neighboring premises.”
The material facts which the plaintiff established at the trial were not substantially disputed by the defendant. It appeared that a woman employed by the plaintiff as a domestic attempted to clean the carpeting covering the seven ground-floor rooms of the plaintiff’s home by scrubbing it with a brush or other applicator, using a solution of household ammonia and water which she had prepared. She did this of her own initiative, without any request by the plaintiff or his wife, neither of whom was home at the time. The solution contained too much *263 ammonia, and she scrubbed too hard, with the result that the carpeting in many places lost its original beige color, turning pink, inferentially wherever the ammonia solution was applied with too heavy a hand. Pink “ spots ” of various sizes and shapes developed in all seven rooms.
Defendant has three contentions: (1) that the loss was not fortuitous and therefore not within the coverage of this inland marine insurance policy; (2) that the exclusion hereinabove quoted is applicable because the loss resulted from ‘ ‘ work * * in the course of ” a “ refinishing, renovating or repairing process ”; and (3) that the insured, although required to do so by the policy, neglected “ to use all reasonable means to save and preserve the property at and after ” the time the “ loss ” occurred.
Notwithstanding the comprehensive all-risk coverage of the policy in suit, there can, of course, be no recovery here unless the plaintiff suffered a fortuitous loss. It may be conceded that the plaintiff’s employee was negligent as well as inexperienced and even that the plaintiff himself was negligent in entrusting her with household responsibilities. But this inland marine insurance policy protects the insured against the consequences of his own negligence. Only fraud or intentional wrongdoing or gross negligence, such as a deliberate disregard of plainly foreseeable consequences, would defeat recovery. Bad judgment may not be equated with bad faith. Ordinarily the unexpected and unforeseen result of a voluntary act is considered an accident. As in liability insurance the insurer assumes the risk of the negligence of the insured, so in marine insurance the insured is protected against the consequences of his own conduct if unattended by fraud or design to cause damage.
It is reasonable to expect that household goods and furnishings will be generally cared for, and of course cleaned, within the home and that damage may result from negligence in the performance of such household tasks. This is one of the risks of household management. A comprehensive all-risk policy covering household goods provides protection against perils peculiar to the maintenance of a household just as the traditional marine policy insures against perils of the sea. (Cf. Insurance Law, § 46; McAllister & Co. v. Western Assur. Co., 218 App. Div. 564 and cases therein cited; Rex Roofing Co. v. Lumber Mut. Gas. Ins. Co. of N. Y., 280 App. Div. 665, a liability insurance case in which “ accident ” was defined by detailed discussion and concrete application; Mellon, etc. v. Federal Ins. Co., 14 F. 2d 997; Ocean Acc. & Guar. Corp. v. *264 Penick & Ford, 101 F. 2d 493, 497, where it was said of the word ‘ ‘ accident ’ ’ as used in the policy there dealt with that an “ accident ” “is not what it might mean to a scientist or one skilled in the subject involved, but what it means to the average man ”.)
As these all-risk policies are generally available to householders and as their sale is not limited to specialists, the run-of-the-mill notion of what constitutes an accident is pertinent. The scientist’s or technician’s understanding in depth is not relevant. From the viewpoint of this plaintiff there was an accident here and a fortuitous loss, for clearly the carpeting was .not deliberately exposed to damage. (Cf. Cross v. Zurich Gen. Acc. & Liability Ins. Co., 184 F. 2d 609, a public liability insurance policy case; Terrien v. Pawtucket Mut. Fire Ins. Co., 96 N. H. 182, in which case the court explained that although “it could be found that the plaintiff’s action in driving his truck over the holes was deliberate, he was not so far chargeable with knowledge that the resulting breakdown was probable, as to require a finding that he deliberately incurred the loss ’ ’; Kraftsow v. Brown, 172 Pa. Superior Ct. 581; distinguishable is Newtown Creek Towing Co. v. Ætna Ins. Co., 163 N. Y. 114, where damage to a vessel was caused by a “ deliberate attempt to break through a known barrier ”, “a field of ice ”, “ the resisting power of which had been miscalculated ” [p. 117]; there the master of the vessel “ designedly ” took the risk “ of running into a perfectly apparent obstruction” [p. 116].) I agree that an insured may not deliberately expose his property to a calculated risk, himself calculating and the insurance company Unknowingly taking the risk. But there is no evidence, and no reason to believe, that such was the case here.
The exclusion contained in the policy and upon which the defendant now relies is not applicable. The damage to the carpeting was not “ occasioned by or actually resulting from any work thereon in the course of any refinishing, renovating or repairing process ”. Dictionary definitions of the word “ renovate ” quoted in the defendant’s brief are not useful in the context of this case. In “ construing a contract of this kind words should not be given a technical meaning but should be taken as they would be understood by an average man ” (Rex Roofing Co. v. Lumber Mut. Cas. Ins. Co. of N. Y., 280 App. Div. 665, 667, supra). Most householders do not think of mere cleaning when done within the home, or even in an outside establishment, as a “renovating process ”. For example, not many persons would consider that by sending their suits or dresses to the cleaner’s they had committed their cloth *265 ing to a “ renovating process Moreover, dictionary definitions do not on the whole favor the defendant’s side of the argument. Primary definitions of “to renovate” as stated in Webster’s International Dictionary [2d ed.] are: “ To renew, make over, or repair The Oxford English Dictionary [1933 ed.] includes the following definitions: “ To renew materially, to repair; to restore by replacing lost or damaged parts; to create new.” Funk & Wagnalls New Standard Dictionary of the English Language has these among other definitions: “ To make as good as new; restore after deterioration, as a building; put in good condition”.
In any event, an exclusionary provision of this kind should be strictly construed. The insurer is chargeable with knowledge that carpets in a home are cleaned by the householder from time to time in various ways. If it harbored an intention to exclude from coverage damage resulting from that kind of household work the insurer could easily have said so. The words “ renovating process ” bring to mind an operation or project not at all resembling an honest scrubbing with water and soap or with water and ammonia. And the words “ refinishing, renovating or repairing process ”, even if separately read, but especially if they are read together as they should be, strongly suggest changes or improvements of a more radical kind and more substantial than a cleaning or washing down (cf. Harvey v. Switzerland Gen. Ins. Co., 260 S. W. 2d 342 [Mo. App.]). It is familiar learning that the risks covered by an insurance policy are defined by inclusion and exclusion. When the policy in hand is considered in the light of this exclusionary provision it becomes even clearer than otherwise that losses attributable to occurrences which are incidental to the care and cleaning of household goods are well within its coverage. The defendant relies upon Wibbelman v. Home Ins. Co. (194 F. 2d 262) but there the exclusion was broader than here for it related to “ loss or damage occasioned by processing or any worlc upon the property unless caused by fire or explosion” (emphasis supplied). It is thus unnecessary to consider whether the decision in the Wibbelman case was altogether realistic and whether it sufficiently took into account the circumstances of the loss in relation to the business of the insured and the probable risks intended to be covered by the policy.
The mishap was discovered by the plaintiff’s wife on the day it occurred, when she came home at about 3 o’clock in the afternoon and saw that the carpeting was wet and in places discolored. She did nothing at the time other than to telephone her husband, the insured, who was at work. The evidence *266 indicated that the full extent of the damage was not apparent until the carpeting had dried, which was not before evening. No attempt was made by the plaintiff then or later to do anything about removing the discolorations. The defendant therefore asserts that the loss, or at least part of it, was “ caused directly or indirectly by” “neglect of the insured to use all reasonable means to save and preserve the property at and after a loss ”. There was expert testimony that the lost color might have been restored by the use of a solution of acetic acid (vinegar) within a brief time, perhaps only a few hours, after the ammonia had been applied. Indeed, as some of the carpeting may have been scrubbed during the morning hours, it is possible that by the time the plaintiff’s wife came home it was already too late. In any event, it would be unreasonable to require or expect that the insured or any member of his household should have known that acetic acid, if immediately or quickly applied, would have saved the carpeting. Here again the insured cannot be penalized for his failure to possess an expert’s knowledge and, thus informed, to act with the extraordinary celerity which was essential if any useful purpose were to have been served. There is therefore no adequate basis for a finding that the loss was “caused, directly or indirectly” or aggravated by “ neglect of the insured to use all reasonable means to save and preserve the property” (emphasis supplied).
That the insured continued to do nothing is immaterial, as delayed action would not have helped. There was no substantial or acceptable evidence that anything useful could have been done even the next day. The defendant’s expert witness testified in effect that in his entire experience he had made five attempts, after the first day, to restore carpeting which had suffered damage from excessive applications of ammonia, that he had twice succeeded and three times failed. He said that the stronger the solution of ammonia which had caused discoloration the less the chance of restoration. It is apparent that here a strong solution of ammonia had been heavily applied. One of the defendant’s witnesses, an independent insurance adjuster, testified that he had found two dozen “ stains ” (discolorations) in the living room as well as a number of “ stains ” in other rooms. He explained that the carpeting in the three rooms which he examined had sustained “multiple blemishes”, some large, some small, and that he found the “ damaged areas ” to be “ a constructive total loss ”. In view of the nature and extent of the damage disclosed by the evidence, there is no basis for an inference that any attempt *267 to treat the carpeting the day after the mishap would have been successful. A finding that the loss was caused or enlarged by the “ neglect of the insured to use all reasonable means to save and preserve the property ” would have no stronger support than speculation.
The defendant expressly waived at the trial any question as to whether it had received sufficient or due notice of loss.
The “ actual cash value ” of the carpeting before it was damaged (without the padding, which remains usable) was $2,100 ($2,800 less $700 depreciation). It now has a salvage value of $200. (Cf. generally, Gervant v. New England Fire Ins. Co., 306 N. Y. 393.) Plaintiff is therefore entitled to recover $1,900.
Judgment may be entered in favor of the plaintiff and against the defendant in the sum of $1,900, with interest from July 11, 1956.