240 So.2d 875 (1970)
Walter K. EGAN, Appellant,
v.
WASHINGTON GENERAL INSURANCE CORPORATION, a New York Corporation, Appellee.
No. 69-652.
District Court of Appeal of Florida, Fourth District.
November 6, 1970.
As Corrected December 4, 1970.
Stanley A. Tucker and Dan Hayes, of Thompson & Tucker, West Palm Beach, for appellant.
George S. Okell, Jr., of Sherouse, Corlett, Merritt, Killian & Okell, West Palm Beach, for appellee.
McCAIN, Judge.
Plaintiff, Walter K. Egan, appeals from a summary final judgment entered in favor of defendant-insurance corporation, finding as a matter of law that the loss of plaintiff's yacht "Blue Heaven" was not covered by a hull insurance policy carried by plaintiff with defendant.
*876 Plaintiff purchased as "used" the yacht in question in 1966. He maintained it in good condition, but in June 1967 discovered that the yacht's sea strainer assembly apparently was not functioning, and that as a consequence, water was flowing unchecked into the hold. The yacht was duly repaired and a "thru bolt" in the sea strainer which had corroded, causing the assembly to malfunction, was replaced. A scant ten months later, in April 1968, the sea strainer again malfunctioned, but this time no one was aboard the yacht to discover it, and the yacht sank while docked, with damage resulting to the vessel.
The controversy centers around the "thru bolt" which was replaced when the 1967 incident occurred. Expert testimony below on both sides reveals the following facts about the bolt: (1) it was a ferromagnetic bolt with a low chromium content; (2) such a bolt in the presence of bronze (here, the sea strainer) in solution with sea water could be expected to corrode over some period of time; (3) corrosion could have been prevented by the addition of "sacrificial zincs" to the sea strainer; (4) corrosion could also have been prevented by use of a bolt with a higher chromium or nickel content; and (5) the bolt was structurally sound.
The hull insurance policy under which plaintiff now claims coverage for the loss originally provided coverage for latent defects and negligence as follows:
"LATENT DEFECT AND NEGLIGENCE. This insurance also to cover, subject to the average warranty, loss of or damage to the subject matter insured directly caused by * * * bursting of boilers, breakage of shafts or any latent defect in the machinery or hull (excluding the cost and expense of replacing or repairing any defective part); contact with aircraft, including articles falling therefrom or with any land conveyance, negligence of master, mariners, engineers or pilots; provided such loss or damage has not resulted from want of due diligence by the owners of the yacht or by the Assured."
However, by an endorsement attached to the policy the parties deleted the above clause and substituted the following:
"PERILS. All Risks of physical loss or damage except as hereinafter provided or as may be excluded by provisions elsewhere in the policy or by any endorsement thereon."
The record does not indicate whether this substitution increased the standard premium paid by plaintiff. However, certain specific exclusions were also provided for by the endorsement:
"SUPPLEMENTAL INSURING LIMITATIONS. This policy does not insure against: (a) Wear and tear, gradual deterioration, inherent vice, marine borers, vermin, repair or replacement of a part in which a latent defect is found. (b) Theft or mysterious disappearance of equipment or accessories, unless occurring in conjunction with theft of the entire yacht, or unless there be visible evidence of forcible entry. (c) Loss, damage or expense intentionally caused by, or with the consent of an assured."
The policy, then, basically insured against "all risks of physical loss or damage." Plaintiff's burden of proof under such a policy is a light one: to make a prima facie case for recovery, he must show only that a loss has occurred. Upon plaintiff's making such a prima facie showing, the burden shifts to defendant-insurer to prove that the loss arose from a cause which is excepted from the policy or for which he is not liable. Couch on Insurance 2d, Vol. 13, § 48:139, p. 596.
On this appeal however, we are concerned not with whether defendant has met its burden, but only with whether disputed issues of material fact have been raised which would preclude entry of summary judgment at this time. Rule 1.510 (c). On a motion for summary judgment, it is not the function of the trial court to *877 decide the disputed issues of fact, but to grant a summary judgment only if no genuine dispute exists. Belflower v. Risher, Fla.App. 1968, 206 So.2d 256; McCauley v. Eastern Steamship Lines, Inc., Fla.App. 1968, 211 So.2d 72.
In this posture, defendant's contention both below and on this appeal is that inasmuch as the bolt corroded over the 10-month period, plaintiff's loss comes within the "gradual deterioration" exception to the "all risks" policy. Plaintiff, on the other hand, argues that the bolt contained a latent defect and that damage due to such defect is covered by a policy insuring against all risks of physical loss or damage. In support of this contention, plaintiff submitted the affidavit of a marine surveyor, who stated his conclusion that the cause of the disaster was a latent defect in the yacht. Upon being deposed with regard to this conclusion by defendant's attorney, the surveyor testified:
"Q But you are of the opinion that that bolt constituted a latent defect?
A Yes, sir.
Q Why? What was wrong with it?
A I can explain this but I am afraid you won't accept the answer.
Where you have, the thing that was wrong with the bolt is putting a steel bolt in contact with bronze castings or metal, thereby they are not compatible while in the solution of sea water.
* * * * * *
Q What you are really saying is that a stainless bolt or Monel bolt would have been more desirable to the installation because it would have resisted rust and corrosion better than a ferromagnetic bolt; that is, one with a very low content of chromuim or nickel.
A It would have been better if the Monel pin would have been put in there in the first place, yes.
Q There was nothing structurally defective about the bolt, as far as you know, that was actually in there?
A I never saw the bolt.
Q I am asking as far as you know.
A As far as I know.
Q It is just that it did not have the ability to resist corrosion and rust?
A True.
Q Especially when set up in peculiar circumstances where you had an electrolyte in the form of sea water to set up galvanic corrosion between the caps and the actual through bolt itself?
A Yes, sir.
Q Then there wasn't anything defective about the design of the through bolt. The defect, if any, was merely that it did not have ability to resist this galvanic corrosive action as well as a Monel or stainless steel bolt?
A That is right, sir."
Remembering that this testimony was given by plaintiff's own expert, it appears that the main thrust of plaintiff's argument turns on the proposition that the bolt in question constituted a latent defect because it corroded more quickly than would a bolt composed of a different alloy.
With this latter proposition we cannot agree. A thorough examination of cases defining and describing latent defects leads us to the conclusion that a "defect" refers to some structural weakness in the part or component which is responsible for the damage. In Cleveland & B. Transit Co. v. Insurance Co. of North America, D.C.S.D.N.Y. 1902, 115 F. 431, the court found that the bedplate of a steamer which was defectively cast, resulting in a "cold shut" (an incomplete fusion of two currents *878 of molten metal of different temperatures) constituted a latent defect. Stated simply, the bedplate was improperly manufactured and had a weak spot which was unable to stand up under the pressures of normal use.[1] That is not the case with the "thru bolt" in question here. No one, including plaintiff, contends that the bolt was not structurally sound  only that a bolt composed of a different alloy would not have deteriorated as rapidly as a ferromagnetic bolt. Moreover, the record indicates that as an alternative to the use of a bolt with a higher chromium content, so-called "sacrificial zincs" which would have protected the ferromagnetic bolt, could have been placed in the strainer.
Determining that no defect in the bolt existed, it is unnecessary to delve into the question of whether or not a latent defect would be covered by the policy.
The facts as outlined above, however, raise other possibilities not explicitly discussed by the parties in the record below but inferable from the evidence,[2] i.e., the possibility that the repairs to the yacht were negligently made and that damage due to negligent repair is covered by the policy. It is impossible to conclude as a matter of law from the record before us that there was or was not such negligence. The question is one which will probably require expert testimony for its determination, and thus presents an issue of fact precluding entry of summary judgment in favor of defendant at this time, if we find here that negligent repair comes within the coverage provided by the policy.
Couch on Insurance, 2d Ed., Vol. 13, § 48:138, p. 596, summing up a series of cases[3] on all risk insurance policies concludes:
"In recent years so-called `all-risk' insurance policies have been used with increasing frequency. Such a policy is to be considered as creating a special type of coverage extending to risks not usually covered under other insurance, and recovery under an `all-risk' policy will, as a rule, be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage. It is doubtful that recovery would be allowed where the loss results from outright fraud or possibly some lesser degree of misconduct of the insured."
Among the cases compiled by Couch is Sun Insurance Office, Limited v. Clay, Fla. 1961, 133 So.2d 735, in which the Supreme Court, in quoting 2 Richards on Insurance, *879 (5th Ed.), § 212, approved the following rule as to coverage under "all risks" policies:
"`This type of contract has been said to cover every conceivable loss or damage that may happen except when occasioned by the wilful or fraudulent act or acts of the insured.'"
Clearly, the damage in the instant case was not occasioned by the wilful or fraudulent act of the insured. Damage caused by negligent repair does not come within any of the exclusionary clauses of the policy. Thus, it would appear that if a jury were to find that there was negligence in the repair of the yacht which was the proximate cause of the loss, then plaintiff could recover.
This position is bolstered by Finkelstein v. Central Mutual Insurance Co., 1957, 8 Misc.2d 261, 166 N.Y.S.2d 989, and Harvey v. Switzerland General Insurance Co., Mo. App. 1953, 260 S.W.2d 342, two cases involving "all-risk" policies covering household goods. The factual situations are similar: in both cases a third party was called in either to clean or treat insured's carpet, with the result in both instances the carpet was severely damaged. In Finkelstein, the court specifically concluded that the owner's employee was negligent, but found that this did not bar recovery by the owner. In Harvey, the policy contained a clause excluding recovery for loss due to deterioration, moth, vermin and inherent vice. The damage was caused when plaintiff's employee attempted to moth-proof the carpet; the court held that the fact that the damage occurred while plaintiff was attempting to prevent an excluded loss was not a bar to recovery.
Finally, although the parties do not disput that the bolt in question did deteriorate over the 10-month period, this does not necessarily lead to the conclusion that the deterioration was gradual. It is impossible to determine from the record whether a deterioration period of ten months is normal or extraordinary for a bolt of this type under these conditions. This question is one which will require additional testimony for its determination, and thus presents an issue of fact precluding entry of summary judgment in favor of defendant on the record now before us.
Accordingly, the summary final judgment is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.
Reversed and remanded.
WALDEN and OWEN, JJ., concur.
NOTES
[1] For other cases where imperfectly made parts have been held to constitute latent defects see Hutchins Bros. v. Royal Exchange Assurance Corp. (Eng) 2 KB 398 (CA) (a cooling crack in a ship's frame); Oceanic S.S. Co. v. Faber (1907, Eng) 23 Times L. 673, 11 Com Cas. 185 (CA) (a tail shaft which developed a flaw when a new end was welded on it); Borland v. Standard Marine Ins. Co., 1925, 125 Misc. 395, 211 N.Y.S. 348 (fractured paddle shaft); American Shops v. Reliance Ins. Co. of Philadelphia, 1953, Co.Ct., 26 N.J. Super. 145, 97 A.2d 513; Shaver Forwarding Co. v. Eagle Star Ins. Co., 1943, 172 Or. 91, 139 P.2d 769.
[2] Even where the physical evidence is uncontradicted, in some circumstances the facts may be susceptible of conflicting factual inferences; where this is so, a genuine issue of material fact exists precluding entry of summary judgment. See Town of Mount Dora v. Bryant, Fla.App. 1961, 128 So.2d 4; Beikirch v. City of Jacksonville Beach, Fla.App. 1964, 159 So.2d 898; Smith v. City of Daytona Beach, Fla.App. 1960, 121 So.2d 440.
[3] Couch cites 88 A.L.R.2d 1122 and supplement. The annotation referred to includes among others, the following cases: Sun Insurance Office, Ltd. v. Clay, Fla. 1961, 133 So.2d 735; McCargo v. Merchants' Insurance Co., La. 1845, 10 Rob. 334; Finkelstein v. Central Mut. Ins. Co., 1957, 8 Misc.2d 261, 166 N.Y.S.2d 989; Goix v. Knox, N.Y. 1800, 1 Johns Cas. 337; Shaffer v. Phoenix Ins. Co., 1959, 21 Pa.Dist. & Co.2d 79, 49 Luz. Leg.Reg.R. 279; Ferdinand v. Agricultural Ins. Co., 1956, 22 N.J. 482, 126 A.2d 323, 62 A.L.R.2d 1179; Harvey v. Switzerland General Ins. Co., Mo. App. 1953, 260 S.W.2d 342.