■ RONALD MACK et al., Respondents, v ROBERT G. DAVIDSON et al., Doing Business as ASHVILLE BAY MARINA, Appellants. RONALD MACK et al., Appellants, v RICHARD R. LYON et al., Doing Business as EDGEWATER MARINE, Respondents. (And Two Third-Party Actions.)—Order and judgment unanimously affirmed, with costs, to defendants Lyon. Memorandum: At about noon on an early November day in 1973 a 28-foot disabled cabin cruiser with a hole through its hull near the water line was tied to a marina dock on Lake Chautauqua. The dock projected out into the lake and was exposed to the wind and waves. Later that same night a storm came up, water filled the boat and caused it partially to submerge. In the suit commenced by the boat's owner for damages, Special Term granted summary judgment to the defendant, Edgewater Marine owners, dismissing the plaintiff's complaint against them. The facts adduced at an examination before trial reveal that plaintiff's disabled 28-foot Owens Cruiser had been towed on that November, 1973 day from a dock of defendant Ashville Marina on Lake Chautauqua to the dock of defendant Edgewater Marine. The transmission had been removed from the cruiser, the drive shaft was loose and the exhaust pipe was not hooked up to the engine. This condition resulted in the existence of an unstoppered opening through the hull of the craft near its water line. The Edgewater Marine is more exposed to weather than is the Ashville Marina. The cruiser was delivered and tied up to the dock and secured by four lines—two on the bow and two on the stern at lunchtime by an employee of the Ashville Marina. No one at Edgewater was advised of the cruiser's condition or that it had been left there. The only facts adduced on this issue are that about a month earlier Mr. Edward Lyon, a partner in Edgewater, received a call from Woody's Boat Yard inquiring whether he (Lyon) had storage room for a 28-foot Owens Cruiser, and he told the caller that there was space available. Nothing further was done about it. Edward Lyon testified that he first became aware that a boat was at his dock around 4:00 P.M. on November 5 when he came to work, but that he had no idea to whom it belonged. He did observe that it was securely tied, but did not get into the boat and was unaware of its being out of commission. Richard Lyon, brother and partner of Edward Lyon, said that at 2:00 P.M. on November 5, 1973 he spoke briefly with the man who had brought the boat down, but that the man was in a hurry and gave him

no time to ask questions. He checked the mooring lines and the boat appeared normal. The next morning he arrived at work about 7:45 A.M. and saw that the boat had sunk. On this appeal plaintiff urges that there were "differences" in the testimony of Edward and Richard Lyon that create questions of fact. There is no evidence that the Lyon brothers were untruthful and we agree with Special Term that there were no questions of fact arising from alleged "differences" between their testimony since Richard Lyon merely stated that he arrived at the dock when the person who delivered the boat was leaving that did not differ in any particular from his brother Edward Lyon's testimony. Nor is there presented any question of fact with respect to an implied promise to pay for storage because no contact of any sort was ever made by plaintiff directly with Edgewater Marine prior to the sinking of the boat. "A 'bailee for hire' has been defined as a contract in which the bailor agrees to pay an adequate compensation for the safekeeping of the thing entrusted to the custody of the bailee, and the bailee agrees to keep it and restore it upon the request of the latter in substantially the same condition as he received it, unless it should be impossible to do so by reason of its injury, loss, or destruction from causes for which he is not responsible" (5 NY Jur, Bailments, § 1, p 8). On this record as a matter of law no "bailment for hire" existed. While Edgewater Marine is not a "bailee for hire", it may be argued that it was, at least, an involuntary or constructive bailee, and a bailment, therefore, may be implied by law (see *Foulke v New York Cent. R. R. Co.,* 228 NY 269; *Phelps v People,* 72 NY 334; see, generally, 5 NY Jur, Bailments, § 24, p 34). An implied bailment is based upon the rule that when one comes into lawful possession of personal property of another, other than by mutual contract of bailment, such person may be treated as a bailee of such property by operation of law and may reasonably be referred to as a constructive bailee (5 NY Jur, Bailments, § 4, p 14). Even assuming the existence of a bailment, however, by securing the mooring lines on a boat of unknown origin, Edgewater Marine discharged its duty of care, i.e., its obligation to exercise care and diligence in protecting and keeping safe plaintiff's boat (see NY Jur, Bailments, § 75). Having found that the defendant Edgewater Marine discharged whatever duty it may have owed as a bailee, constructive or otherwise, appellant's final argument, attempting to create a question of fact with respect to the condition of the boat when it was delivered and the cause of its sinking, is irrelevant. Finally, Special Term properly denied plaintiff's motion for summary judgment, inasmuch as there is a question of fact with respect to whether plaintiffs were contributorily negligent since a substantial factor in the sinking of the boat was the failure of either plaintiff and/or defendant Ashville Marina to communicate directly and clearly their wishes to Edgewater Marine regarding the disposition that should be made of the cruiser. (Appeals from order and judgment of Chautauqua County Court—summary judgment.) Present—Marsh, P. J., Cardamone, Simons, Dillon and Witmer, JJ.