Totlee BROWN and Joyce Dixon, Plaintiffs,

v.

Larry STINSON, Defendant.

No. 83 Civ. 6162.

United States District Court, S.D. New York.

May 22, 1993.

Ronald J.L. Jackson, Brooklyn, NY, for plaintiffs.

Larry Stinson, pro se.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

On August 17, 1983, Totlee Brown[1] (Brown) instituted this suit against Larry Stinson (Stinson) which began a ten-year odyssey of disappearing witnesses, counsel substitutions, settlements made and broken, and other intractable delays. A bench trial was held in April 1991, but no judgment was entered because the parties reported that they had settled the matter. Unfortunately, the settlement was never consummated and the case was reopened. This decision will finally put the dispute to rest.

## BACKGROUND

For the relevant period, plaintiff was employed by ABC Television as a camera operator and electronic graphics engineer, but possessed a minimal level of sophistication regarding financial matters. T. 17, 22, 28, 155–56. By contrast, defendant held a degree from the University of Pennsylvania's Wharton School of Business and Commerce and, as an account officer at Citibank, managed loan requests for large depositors. T. 116–17, 152–55.

1. Totlee Brown's mother, Joyce Dixon (Dixon), was added as a plaintiff in the amended complaint. However, Dixon has failed to prove any cause of action against Stinson. Dixon established only that she lent Brown $5,000 which in turn Brown entrusted to defendant. T. 9–10. Therefore, all claims made by her are dismissed. Hereinafter, the term "plaintiff" refers only to Totlee Brown.

In 1980, plaintiff sought personal investment advice and was referred by her brother, Douglas Brown, to defendant. T. 18, 118–123. During a number of meetings between the parties, plaintiff asked defendant how she should invest her money. T. 28, 35, 122. Defendant suggested that she invest in an African mask and claimed that a $10,000 investment could return $15,000 to $19,000 in three to four months. T. 39, 126–132. Defendant admits that he knew next to nothing about the African art market and knew of no individual who had made substantial profits in the African art trading. In fact defendant had not even seen the particular piece of art he convinced plaintiff to purchase. T. 130–33. Defendant's advice was based entirely on the representation of an art dealer, Isakka Zango (Zango), who owned the art work in question. T. 124–25. Defendant admitted he knew that any investment with such an exorbitant rate of return would involve a proportionate level of risk, T. 155, and he acknowledged the fact that banks do not invest in art because the value of a particular piece is too subjective. T. 132–33. However, defendant never discussed these risks with plaintiff, T. 155, and made his recommendation to purchase with the expectation that Brown would act upon it. T. 133.

Once plaintiff decided to purchase the art work, the parties agreed that defendant would execute the transaction and hold the mask for resale on plaintiff's behalf. T. 40–41, 126. Plaintiff delivered to defendant two checks (of $2,000 and $5,000) payable to defendant along with $3,000 in cash. T. 41–43, 126, 128. Defendant used these funds to purchase the African mask from Zango. T. 55, 128. Plaintiff presented expert testimony that the retail value of the piece of art purchased could not have exceeded $4,000 to $6,000.[2] T. 107. Defendant received no invoice or receipt to memorialize the sale. T. 138. Defendant stored the mask in his home until Zango indicated that he had an unnamed buyer for the mask somewhere in Europe. T. 129, 59–60. In order to effectuate its resale, defendant gave plaintiff's mask back to Zango taking only a backdated invoice from the original sale as a receipt. T. 136–38. At trial there was no evidence that defendant ensured plaintiff's interest in the mask through a formal contract or consignment agreement with Zango, and it is unclear what transpired once the mask was given to Zango. Plaintiff never received any payment from defendant or Zango, and when plaintiff complained to defendant, he told her to pursue her claim against Zango alone. T. 63–64, 141.

## DISCUSSION

Plaintiff's amended complaint states claims for fraud, conversion, and breach of the duty of fair dealing.[3] In addition, plaintiff makes a post trial motion pursuant to Rule 15(c)(2), Fed.R.Civ.P., to amend the pleading to include claims for negligent misrepresentation and negligence.[4] We grant the motion and find for plaintiff on the fraud, negligent misrepresentation and negligence claims.

### I. Fraud

The elements of common law fraud are a material, false representation, an intent to defraud thereby, and a reasonable reliance on the representation, causing damage to plaintiff. *Katara v. D.E. Jones Commodi-*

---

**2.** Indeed, the probable value of the mask was much less. Only one year before defendant purchased the mask, it fetched under $1,000 at a Sotheby's auction. T. 103. However, the expert testified that this was probably a wholesale price and that a retail price might be several times the wholesale price. T. 107.

**3.** Conversion occurs when defendant substantially interferes with another's interest in a chattel. *Iglesias v. United States*, 848 F.2d 362, 364 (2d Cir.1988). At times fraud or a bailee's misdeeds may be sufficient interference with a chattel to support a claim for conversion. *See generally*, W. Prosser, *Law of Torts*, § 15 (4th ed., 1971).

However, plaintiff does not promote her conversion claim in her post trial submissions and the claim is redundant in the context of the fraud and gross negligence claims analyzed below. Therefore, we do not reach plaintiff's conversion claim.

In addition, plaintiff's claim that defendant has violated an implied covenant of good faith and fair dealing is without merit because plaintiff has not shown the existence of a contract from which such a covenant might arise.

**4.** Plaintiff makes her motion in her post-trial proposed conclusions of law.

*ties, Inc.,* 835 F.2d 966, 970 (2d Cir.1987). We find that plaintiff has established all elements of common law fraud by clear and convincing evidence. *Leucadia, Inc v. Reliance Ins. Co.,* 864 F.2d 964, 971 (2d Cir. 1988), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3160, 104 L.Ed.2d 1023 (1989) (fraud must be shown by clear and convincing evidence).

■ To support a claim for fraud, plaintiff must prove that defendant made statements that were either false or made in reckless disregard of the truth. *Idrees v. American University of the Caribbean,* 546 F.Supp. 1342, 1342 (S.D.N.Y.1982); *see DiRose v. PK Management Corp.,* 691 F.2d 628, 633 (2d Cir.1982), *cert. denied,* 461 U.S. 915, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983) (a fraudulent misrepresentation may consist of a reckless statement made with the pretense of knowledge that it was true when statement was actually made in ignorance). Plaintiff credibly testified that defendant assured her she would not lose her initial investment. T. 30. Nonetheless defendant admitted that, as a financial professional, he knew that there is a trade-off between risk and return and, since he expected a return of 50% to 90% over a three to four month period,[5] he knew or should have known the investment involved substantial risk. T. 155. Furthermore, defendant knew that financial institutions would not invest in art because they considered the medium too speculative. T. 132–33. Thus, defendant represented that African art was a safe investment either knowing or recklessly disregarding the likelihood that it was not. In addition, defendant recklessly represented that African art would yield an exorbitant rate of return. Defendant had no expertise in the African art market, and he knew of no one who had achieved such a return. Indeed defendant based his statement only on the unsupported assertion of the man from whom he would buy the mask and made this representation before he had even seen the item which he was recommending. Therefore, we find defendant made sufficient knowing or reckless misstatements to support plaintiff's fraud claim.

■ To establish scienter plaintiff must show an intentional or reckless misstatement made with the intent that plaintiff rely upon it. *Revlon, Inc. v. Carson Products Co.,* 602 F.Supp. 1071, 1101 (S.D.N.Y.1985), *aff'd,* 803 F.2d 676 (Fed.Cir.), *cert. denied,* 479 U.S. 1018, 107 S.Ct. 671, 93 L.Ed.2d 722 (1986) (scienter may be proven by a showing of acts, the natural consequence of which are presumably intended by the actor, or by showing gross negligence in making a misrepresentation). At the trial defendant testified that he intended plaintiff to act on his advice. T. 133. Therefore, his knowing and reckless misstatements, discussed above, were made with scienter.[6]

The facts above clearly show that plaintiff relied on defendant's statements by purchasing the masks and that the advice caused plaintiff to lose $10,000. Thus, we find for the plaintiff on the fraud count.

## II. Negligent Misrepresentation

■ A party is liable for a negligent misrepresentation if it is made with the knowledge, notice, and expectation that another will rely upon it, and if the other party in fact relies on the statement to his detriment. There must also be some relationship of trust between the parties from which defendant's duty to plaintiff arises. *Mallis v. Bankers Trust Co.,* 615 F.2d 68, 81–81 (2d Cir.1980), *cert. denied,* 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981) (J. Friendly). Defendant made statements as to the safety and expected return of African art investments with no reasonable basis for be-

---

**5.** This profit amounts to an annual return of 150% to 360%.

**6.** It should be noted that plaintiff did not show that defendant benefited from the fraud. However, any evidence that defendant profited from the transaction would only demonstrate defendant's motive to defraud which is not a requisite element of this cause of action. *See Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 152 (2d Cir.1993) (to state a claim for fraud plaintiff need not allege facts which show defendant's motive); *see also Beck v. Manufactures Hanover Trust Co,* 820 F.2d 46, 50 (2d Cir.1987) (discussing scienter in mail and wire fraud context); *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989) (discussing scienter in the securities fraud context).

lieving that his statements were true and, as he intended, plaintiff relied on his advice. Therefore, defendant is liable to plaintiff for negligent misrepresentation if the relationship between the parties was such that a duty of care existed.

There are few New York cases addressing the types of relationships which create a duty to speak with care. However, the focus of this inquiry has shifted away from the parties' formal legal relationship towards the reasonable expectations of the parties. The Second Circuit predicts that the New York courts are most likely to follow this majority rule. *Id.; MEI Int'l v. Schenkers Int'l Forwarders, Inc.*, 807 F.Supp. 979, 985 (S.D.N.Y. 1992). The relationship between defendant and plaintiff is a bit mysterious. Although plaintiff viewed defendant as her investment advisor, defendant claims that he never represented himself as anything other than a friend. T. 35, 118, 133–34. Plaintiff never explained, nor did defendant ask, what her overall financial status or objectives were, T. 121, and there is no evidence of any arrangement to compensate defendant for his services. T. 36, 135. On the other hand, defendant did provide plaintiff with specific investment advice upon which he intended her to act, and he executed the art purchase as agent for plaintiff. Plaintiff gave defendant $10,000 without getting a receipt; defendant was given complete control over plaintiff's money and the property acquired therewith for the duration of the transaction. This relationship demonstrates a high degree of trust between the parties from which a duty may arise. Furthermore, plaintiff viewed defendant as her investment advisor, and defendant admits that he expected plaintiff to rely on his investment advice. Given that the duty to speak with care is created by the reasonable expectations of the parties and reliance was anticipated by both parties, we find that the relationship between the parties was sufficient to create a duty to speak with care. This duty having been breached, we find for the plaintiff on the negligent misrepresentation claim.

### III. Negligent Execution of the Transaction

■ Since defendant's implementation of the transaction was as inept as his investment advice, plaintiff may also recover for defendant's negligent behavior. Once plaintiff decided to buy the mask, defendant offered to execute the transaction on plaintiff's behalf. Having made such a proposal, defendant undertook the duty to act with due care. *Nallan v. Helmsley–Spear, Inc.*, 50 N.Y.2d 507, 522, 429 N.Y.S.2d 606, 615, 407 N.E.2d 451, 459–60 (1980) (when one assumes a duty to act, even gratuitously, he thereby becomes subject to a duty of care).

■ To determine whether defendant has assumed a duty of care the question is whether defendant's actions have advanced to the point where they have "launched a force or instrument of harm, or [they have] stopped where inaction is at most a refusal to become an instrument of good." *Id.* (citing *Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 167–68, 159 N.E. 896, 898 (1928) (J. Cardozo)). Defendant agreed to take plaintiff's money, buy an African mask, and hold it until a buyer could be found. When it came time to sell the mask, defendant exclusively handled that transaction as well. Plaintiff never met the art dealer and could not have made the deal absent defendant's agreement to act on her behalf. Thus, defendant's participation in the transaction was a sufficient undertaking to create a duty to execute the transaction with care. *See College Auxiliary Services of State University College at Plattsburgh, Inc. Slater Corp.*, 90 A.D.2d 893, 456 N.Y.S.2d 512, 513 (3d Dept.1982) (if one acts in a professional capacity, even if gratuitously, he is duty bound to act with reasonable care).

■ Defendant breached this duty by executing the transaction in a negligent fashion. Defendant took $10,000 from plaintiff, bought a mask whose retail value could not have exceeded $6,000 and took no invoice or receipt to memorialize the transaction at the time of the sale. Once Zango purported to have an unnamed buyer somewhere in Europe, defendant returned the mask to the art dealer, taking only a backdated invoice of his original purchase as a receipt. Despite the fact that defendant knew that the art dealer was planning to take the mask out of the

country, defendant made no contract or consignment agreement with Zango to secure plaintiff's interest in the mask. Thus, defendant breached his duty and is liable for the negligent, indeed reckless, execution of this transaction.

Even if this were not a sufficient undertaking to support an ordinary duty of care, defendant would be liable as plaintiff's gratuitous bailee for handling the transaction in a grossly negligent manner. An implied bailment arises when one comes into lawful possession of the personal property of another. *Mack v. Davidson*, 55 A.D.2d 1027, 391 N.Y.S.2d 497, 499 (4th Dept.1977); *Tremaroli v. Delta Airlines*, 117 Misc.2d 484, 458 N.Y.S.2d 159, 160 (Civ.Ct.1983). Defendant agreed to purchase the mask with plaintiff's funds and hold it for plaintiff until a buyer could be found. Thus, defendant was plaintiff's bailee. However, because plaintiff did not establish that defendant received any benefit from the transaction, defendant can only be considered a gratuitous bailee, who can only be held liable for acts of gross negligence. *Jays Creations, Inc. v. Hertz Corp.*, 42 A.D.2d 534, 344 N.Y.S.2d 784, 785–86 (1st Dept.1973); *Linares v. Edison Parking, Inc.*, 97 Misc.2d 831, 414 N.Y.S.2d 661, 662 (Civ.Ct.1979); *Rosen v. Village Chevrolet, Inc.*, 63 Misc.2d 174, 311 N.Y.S.2d 230, 233 (Civ.Ct.1970). Nonetheless, defendant's behavior was so careless that it constitutes gross negligence. Stinson allowed Zango to take plaintiff's mask out of the country without making any formal agreement to secure plaintiff's interest; indeed he did not even take a receipt from Zango. We find defendant's execution of the transaction was grossly negligent and a breach of the duty to plaintiff as her gratuitous bailee.

*IV. Damages*

Plaintiff claims not only her $10,-000 investment but also the $9,000 return promised by defendant. However, the proper measure of damages for fraud under New York law is plaintiff's out-of-pocket loss. *Ostano Commerzanstalt v. Telewide Sys., Inc.*, 794 F.2d 763, 766 (2d Cir.1986). Thus, plaintiff is only due the $10,000 she entrusted to defendant. In addition New York CPLR

§§ 5001(a) and 5004 require that pre-judgment interest be applied at a rate of 9% per annum. *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 994 (2d Cir.1983) (pre-judgment interest appropriate for common law fraud). Plaintiff does not request pre-judgment interest in her post trial papers, but this does not prohibit its award. *Id.; Newburger, Loeb & Co., Inc. v. Gross*, 611 F.2d 423, 433 (2d Cir.1979) (pre-judgment interest granted despite plaintiff's failure to request it). The checks given by plaintiff to defendant were dated late September and early October of 1980. T. 50. Therefore, we calculate 13 years and 7 months of interest at a rate of 9% per annum on a simple interest basis which amounts to an interest award of $12,-225. Judgment for plaintiff will be entered in the amount of $22,225, plus taxable costs.

**SO ORDERED.**