The CITY OF AMSTERDAM, Plaintiff,

v.

Daniel GOLDREYER, LTD. and Daniel Goldreyer, Defendants.

No. 93 CV 5012 (SJ).

United States District Court, E.D. New York.

April 13, 1995.

2161–62.

David S. Elkind, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for plaintiff.

S. Herman Klarsfeld, New York City, for defendants.

*MEMORANDUM & ORDER*

JOHNSON, District Judge:

## INTRODUCTION

The City of Amsterdam brought suit against Daniel Goldreyer Ltd. and Daniel Goldreyer ("Defendants") to recover damages for breach of contract. Defendants now seek dismissal of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a cause of action upon which relief can be granted. Defendants also move to strike the punitive damages claim pursuant to Federal Rule of Civil Procedure 12(f). In the alternative, Defendants request a stay of the proceedings pending the outcome of a state court action involving the Defendants and employees of Plaintiff. For the foregoing reasons, this Court denies Defendants' motion in its entirety.

## BACKGROUND

On November 5, 1993, the City of Amsterdam (the "City" or "Plaintiff") filed suit against Daniel Goldreyer ("Goldreyer") and Daniel Goldreyer, Ltd. ("Goldreyer, Ltd.") alleging six causes of action. Plaintiff alleges that Goldreyer failed to honor the terms of a written agreement with the City of Amsterdam ("Restoration Agreement") for the restoration of a valuable painting, entitled "Who's Afraid of Red, Yellow and Blue III" by the famous modern artist, Barnett Newman (the "Artwork"). The painting is owned by the City of Amsterdam and hung in the City's Stedelijk Museum (the "Museum"). Plaintiff asserts that Goldreyer engaged in a pattern of fraudulent misrepresentations concerning the method utilized in the restoration. Plaintiff also alleges that the method actually utilized by Goldreyer resulted in substantial damage to the painting.

Defendant Goldreyer, Ltd. is a corporation organized and existing under the laws of New York with its principal place of business in New York City. Goldreyer, Ltd. specializes in the restoration of artwork and has an international reputation in its field. Owned and operated by Goldreyer, this corporation

served as the official conservator for the work of Barnett Newman.

On March 8, 1988, Goldreyer was retained to restore the Artwork, which had been slashed by a vandal while hanging in the Museum. The Restoration Agreement called for Goldreyer to restore the painting back to its best possible condition. (Beeren's Aff.Ex. A at ¶4). Paragraph 7 of the Restoration Agreement states, "[w]ith regard to advising the principal during the conservation, the following shall be the format: a. From the side of the principal a committee will be formed to advise and suggest the conservation proceedings. The final methodology shall be in the discretion of the Conservator." (Beeren's Aff.Ex. A at ¶2). Goldreyer was also obligated to make a specification in writing of the work to be carried out and to keep the City informed of all action taken on the Artwork.

The City alleges that Goldreyer made numerous fraudulent misrepresentations to the Museum with respect to the method he was using to restore the Artwork. Goldreyer stated that he was utilizing the "pinpointing" method of restoring the damaged section of the painting when, in fact, he allegedly overpainted the largest portion of the painting. The "pinpointing" restoration technique involves layering many dots over the cracks in the red paint formed by the slash. This technique is considered the most effective method of maintaining the original translucency of the Artwork. The alleged misrepresentations included verbal and written assertions by Defendants and their attorney that the pinpointing method had been used and that the painting had not been overpainted. The Restoration Agreement did not specify which restoration method would be utilized; rather, it called for "in progress" reports from Goldreyer to various Museum representatives. Plaintiff maintained the right to withdraw from the contract if dissatisfied with the restoration progress. Plaintiff alleges that Goldreyer failed to submit these bi-monthly progress reports for a five-month period from September 1990 through February 1991. (Compl. at ¶24).

The first misrepresentation was allegedly made when the Museum's Chief Curator, Ms. Dippel, visited Goldreyer at his New York office in September 1990. Dippel observed a small portion of the Artwork that had been restored using the pinpointing method. Goldreyer informed Dippel that he would continue to use the pinpointing method for the remaining restoration.

In March 1991, the Museum's Chief Conservator of Paintings, Ms. Bracht, first raised the issue of whether the painting had been overpainted on her official visit to the Museum. In response to this concern, Wilhelmus A.L. Beeren, the Director of the Museum, contacted Goldreyer and his attorney and asked whether the Artwork had been overpainted. Beeren subsequently received verbal assurances from Goldreyer that the undamaged areas of the painting had not been overpainted. In addition, Beeren received a written response from Goldreyer's attorney, S. Herman Klarsfeld, dated April 15, 1991, stating that the painting had not been overpainted. Goldreyer also represented that the pinpointing method was used in his Complete Conservation Report, submitted upon completion of the restoration on August 5, 1991. The Artwork was returned to the Museum on August 12, 1991. Plaintiff alleges that these representations constitute fraud on the part of Defendants.

Plaintiff further alleges that it detrimentally relied on the fraudulent misrepresentations made by Defendants. Specifically, due to such misrepresentations, the Museum representatives signed two agreements on the fifth and twelfth of August, 1991, respectively, which stated that the Artwork was in "good and satisfactory condition." The first of such agreements is the "Letter Agreement," which addresses the payment arrangement between the parties and obligates Defendants to maintain public silence about the restoration; it was signed by the Museum's attorney, Jan Bless. (Beeren's Aff.Ex. D). The second agreement is the Mutual Receipt, the language of which was altered at Beeren's request, but which still incorporated the "good and satisfactory" language and bound Plaintiff to the terms of the Letter Agreement. (Beeren's Aff.Ex. G). Once the Artwork was returned to the Museum and publicly displayed, the art community in Am-

sterdam and internationally, including Time Magazine and the Wall Street Journal, claimed that both the damaged and undamaged areas of the painting had been overpainted and described the work as "ruined." (Compl. at ¶ 33).

In response to these concerns, the City submitted the Artwork to the Forensic Laboratory of the Netherlands Ministry of Justice for testing to determine whether the Artwork had been painted over. Defendants declined to participate in the study. The study revealed that the damaged area of the Artwork had been painted over and that an alkyd varnish had been applied as a sealer. These actions have allegedly destroyed the translucency of Newman's original work. The City contends that the overpainting and the application of the sealer were not disclosed by Goldreyer and that such restoration technique is inconsistent with industry restoration standards because the new paint and sealer are not removable without damage to the Artwork.

The Complaint avers that as a result of this "overpainting", Plaintiff has suffered damages in the amount of 3.5 million dollars due to a great reduction in the value of the Artwork. The general public is also deprived of the opportunity to view a valuable work of art by Barnett Newman.

## DISCUSSION

### I. STANDARD OF REVIEW

■ A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Green v. Maraio*, 722 F.2d 1013, 1015–16 (2d Cir.1983) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). The court must accept as true all material facts well-pleaded in the complaint and must make all reasonable inferences in the light most favorable to the

plaintiff. *In re Energy Sys. Equip. Leasing Sec. Litig.*, 642 F.Supp. 718, 723 (E.D.N.Y. 1986).

### II. REQUEST FOR JUDICIAL NOTICE

Defendants request that this Court take judicial notice of the pending state court action between themselves and Plaintiff's agents in this case, Beeren and Bracht. Specifically, Defendants seek judicial notice of the amended complaint in the state court action, the notice of motion to dismiss, the Beeren and Bracht Affidavits, and the decision and order of the state court. The stated purpose of Defendants' notice request is to illustrate that "another action between Goldreyer and City employees is pending in which the central issues to be adjudicated are virtually identical to the issues in this case, namely, Goldreyer's efforts to restore the Barnett Newman painting ..." (Defs.' Req. Judicial Notice at 3).

Defendants' request is made pursuant to Federal Rule of Evidence 201(b), which provides, in pertinent part:

> A judicially noted fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Fed.R.Evid. 201(b). *See, e.g., Meredith v. Beech Aircraft Corporation*, 18 F.3d 890, 895 (10th Cir.1994). Defendants also rely on section (d) of Rule 201, which specifies that judicial notice is mandatory if requested and if the party supplies the necessary information. Fed.R.Evid. 201(d).

■ Under this standard, this Court is required to take judicial notice of the pending state court action.[1] The extent of such judicial notice, however, is not as broad as Defendants construe it. New York law is clear that a court may take judicial notice of a document filed in another court "not for the

---

1. Although there are some similar issues in the federal and state proceedings, they are not identical, as Defendants suggest. For instance, the underlying contracts in the two breach of contract claims are different. The action before this

Court involves the terms of the Restoration Agreement, while the contracts at issue in the state court action are the Letter Agreement and the Mutual Receipt.

truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Liberty Mutual Insurance Company v. Rotches Pork Packers*, 969 F.2d 1384, 1388–89 (2d Cir. 1992). *See also Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir.1991).

■ Thus, while this Court recognizes the pending state court action, the documents filed in connection with the state court action cannot be used substantively for their truth. Defendants attempt to use the substance of the affidavits of Beeren and Bracht to establish facts at several points in their motion. The affidavits are useful to illustrate that certain factual averments were made, but they cannot be used to verify the truth of such statements. *F.D.I.C. v. O'Flahaven*, 857 F.Supp. 154, 157 (D.N.H.1994). *See also E.I. DuPont de Nemours & Co. v. Cullen*, 791 F.2d 5 (1st Cir.1986). Thus, Defendants cannot use these affidavits to verify or disprove any disputed substantive issues in this action.

■ For the same reasons, the order of Judge Greenfield in the state action cannot be recognized as a finding of fact in this federal action. In *U.S. v. Jones*, 29 F.3d 1549, 1553 (11th Cir.1994), the court conclusively stated, "courts may take judicial notice of another court's order only for the limited purpose of recognizing the judicial act that order represents or subject matter of litigation." *See Colonial Leasing Etc. v. Logistics Control G.I.*, 762 F.2d 454 (5th Cir.1985) (district court could properly take notice of the judgment for the limited purpose of taking as true the action of the court in entering judgment).

■ The decision of the state court only addresses the sufficiency of the complaint in that action and that is the only weight that can be properly attributed to it. The findings of the state court concerning disputed questions cannot be taken as true for the purpose of resolving this action. This is especially important on a motion to dismiss where the issues have not been fully litigated. Finally, the doctrines of res judicata and collateral estoppel are inapplicable here. The court in *City of Mount Clemens v. U.S.*

*E.P.A.*, 917 F.2d 908, 915 n. 6 (6th Cir.1990) held that "the denial of a motion to dismiss is not the type of judgment given *res judicata* effect." *See also U.S. v. Seaboard Surety Co.*, 622 F.Supp. 882, 885 (E.D.N.Y.1985).

For the foregoing reasons, this Court takes judicial notice of the pending state court action for the limited purpose of recognizing the subject matter of the litigation.

## III. BREACH OF CONTRACT

Defendants seek to dismiss Plaintiff's first claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Defendants do not contest Plaintiff's assertions that Defendants breached the Restoration Agreement; rather, they rely on the two written releases signed by the City's representatives as a bar to the City's right to challenge the Restoration Agreement. Defendants argue that the signed releases constitute an accord and satisfaction of the Restoration Agreement, and thus extinguishes any right on Plaintiff's part to claim a breach of the Agreement. (Defs.' Mot. to Dismiss at 13). This argument is faulty for two reasons.

■ First, accepting the Plaintiff's allegations as true, the Complaint does set forth facts which would entitle the City to relief. The Complaint avers that Defendants took action which violated the written terms of the Restoration Agreement. Defendants' Answer to the Complaint does not argue that any of the City's allegations are not suitable for recovery of damages, but rather seeks to offer an affirmative defense to the charges. As a motion to dismiss is solely concerned with the sufficiency of the complaint, Defendants' defenses are not a factor in that evaluation. Therefore, under the reasoning of *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), Plaintiff's claim must survive judicial scrutiny for purposes of a Rule 12(b)(6) attack.

■ The second ground for denying Defendants' motion is based on the claim that Plaintiff's allegations are invalidated by the signed agreements under the accord and satisfaction doctrine. An accord and satisfaction is a method of discharging a contract

or settling a cause of action arising from a contract or a tort, by substituting for such contract or cause of action an agreement for the satisfaction thereof and an execution of such substituted agreement. 19 N.Y.Jur.2d, Compromise, Accord, and Release § 1. The law in New York on the accord and satisfaction doctrine is clear: it is an affirmative defense as to which the asserting party bears the burden of proof. *Stahl Management Corp. v. Conceptions Unlimited*, 554 F.Supp. 890, 893 (S.D.N.Y.1983); *See also Studiengesellschaft Khole v. Novamont*, 485 F.Supp. 471, 475 (S.D.N.Y.1980); *S. Leo Harmonay v. Binks Mfg. Co.*, 597 F.Supp. 1014, 1028 (S.D.N.Y.1984) (holding defendant bears the burden of proving an accord and satisfaction defense).

In order for Defendants to successfully assert accord and satisfaction as an affirmative defense, this Court must find that the releases are valid. A finding of fraud will invalidate any signed release. In *Joint Venture Asset Acquisition v. Zellner*, 808 F.Supp. 289, 302 (S.D.N.Y.1992), the court held, "[u]nder New York law, a release or waiver clause may be attacked and set aside, even if it is clear on its face, for substantive flaws in its execution, such as fraud in the inducement, illegality, duress, or mutual mistake." *See Barrett v. United States*, 660 F.Supp. 1291, 1309 (S.D.N.Y.1987) (release may be set aside if induced by fraud). Thus, the accord and satisfaction doctrine necessarily implicates questions of fact that must be resolved at trial, not on a motion to dismiss. *Esfahani v. Citibank, N.A.*, 587 F.Supp. 841, 842 n. 1 (S.D.N.Y.1984).

Since Plaintiff's allegations are sufficient to state a claim that would entitle it to relief if found to be true, and since Defendants have offered no contrary evidence that can properly be considered on a Rule 12(b)(6) motion, Defendants' motion is denied.

## IV. CONVERSION

Defendants also seek to dismiss Plaintiff's claim that Defendants' breach amounted to a conversion. In support of this argument, Defendants point to several factors: first, Goldreyer was in lawful possession of the Artwork; second, the signed receipts stated that the Artwork was in good and satisfactory condition; and finally, the City did not have an unqualified right to immediate possession, a key element of conversion. (Defs.' Mot. to Dismiss at 17–18). These arguments are not compelling.

In New York, the tort of conversion consists of the unauthorized exercise of dominion over the property of another to the exclusion of the owner's right, or the unauthorized use of that property. 23 N.Y.Jur.2d, Conversion § 1. Given New York's broad interpretation, lawful possession of the property of another does not necessarily defeat a claim of conversion. In *Rosalinda v. Kent*, 86 A.D.2d 587, 446 N.Y.S.2d 312 (1st Dep't 1982), the court found that although the defendants had a right to limited possession, they undertook an exercise of dominion over the property not contemplated by the agreement by exercising full custodial rights. This dominion was found to constitute a conversion. *Id.* at 588, 446 N.Y.S.2d 312. *See also Meese v. Miller*, 79 A.D.2d 237, 243, 436 N.Y.S.2d 496 (4th Dep't 1981) (rejecting defendant's claim that plaintiff lacked immediate *superior* right to possession on motion to dismiss). Moreover, the commission of fraud may also be sufficient interference to support a claim of conversion. *Brown v. Stinson*, 821 F.Supp. 910, 913 n. 3 (S.D.N.Y.1993). Plaintiff also relies on the Restatement of Torts which states in its official comments:

> "... even though there is no such change in identity, the chattel may be so materially altered that its essential character is changed, and such a change is sufficient for conversion. This is true, in general, whenever the change materially affects the value of the chattel to the plaintiff for the normal uses to which such chattels are put."

Restatement (Second) of Torts § 226 cmt., at 440 (1965).

Defendants' second argument for dismissal of the conversion claim—that the signed releases stated that the Artwork was in good and satisfactory condition—cannot invalidate Plaintiff's allegations on a 12(b)(6)

motion. There are questions of fact implicated that must be resolved by a factfinder.

■ Defendants' final contention is that the City's claim is barred because the City did not have an unqualified right to immediate possession of the Artwork. The argument is that since Plaintiff would be obligated to compensate Defendants for the work completed on the Artwork before Plaintiff could obtain rightful possession, Defendants cannot be said to have committed a conversion. The fact, however, that Defendants could have obtained an artisan's lien on the Artwork is not sufficient to extinguish Plaintiff's right to possession. Even if a lien existed, which is not the case here, a property owner could bring a conversion claim, provided that the owner make a tender offer of the amount due before bringing the action. *Zuber v. Mehrle*, 112 N.Y.S. 1093 (1908).

The Complaint, therefore, meets the criteria to establish a valid conversion cause of action.

## V. TRESPASS TO CHATTEL

Defendants seek to dismiss Plaintiff's claim for trespass to chattel under the same reasoning as that offered in opposition to the conversion claim. The City alleges that Defendants wrongfully and intentionally damaged and interfered with the use and enjoyment of the Artwork, and that the City and the public have been damaged as a result. (Compl. ¶ 51).

■ A trespass to chattel occurs when a party intentionally damages or interferes with the use of property belonging to another. Restatement (Second) of Torts §§ 217–221, at 417–428 (1965). *See also* 61 N.Y.Jur., Trespass, ¶ 8; *Sporn v. MCA Records*, 58 N.Y.2d 482, 487, 462 N.Y.S.2d 413, 448 N.E.2d 1324 (1983). The Restatement further defines trespass to chattel as follows:

One who uses a chattel with the consent of another is subject to liability in trespass for any harm to the chattel which is caused by or occurs in the course of any use exceeding the consent, even though such use is not a conversion.

Restatement (Second) of Torts § 256, at 488 (1965).

Here, Plaintiff alleges that Defendants performed work on the Artwork which deviated from the express terms of the Restoration Agreement. For the reasons already stated in the discussion of the conversion claim, Defendants' arguments on the trespass to chattel claim are legally insufficient.

## VI. FRAUD

Defendants set forth three reasons to dismiss Plaintiff's fourth claim, fraud, under Federal Rule 12(b)(6): (1) Plaintiff's allegation of reliance on Goldreyer's misrepresentations fails because the City was on actual notice of the falsity of Goldreyer's statements; (2) Plaintiff does not allege any injury; and (3) the fraud claim was waived. (Defs.' Reply Mem. at 19.)

■ To establish an action for fraud under New York law, a plaintiff must allege the following elements:

(1) the defendant made a misrepresentation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury.

*Computerized Radiological Services v. Syntex Corp.*, 786 F.2d 72, 76 (2d Cir.1986) (quoting *Brown v. Lockwood*, 76 A.D.2d 721, 730, 432 N.Y.S.2d 186 (2d Dep't 1980)). *See also Geler v. Nat'l Westminster Bank*, 770 F.Supp. 210, 212–13 (S.D.N.Y.1991).

■ Defendants' argument that the City's reliance was not justified is an issue of fact that must be litigated at trial. The court in *Whitbread (US) Holdings v. Baron Philippe De Rothschild*, 630 F.Supp. 972 (S.D.N.Y.1986), denied a defendant's motion to dismiss for lack of justifiable reliance by plaintiff. The defendant in that case alleged that the plaintiff's reliance on its representations was reckless and therefore, unreasonable. The court held that "a plaintiff need only plead that he relied on defendant's representations. The reasonableness of any reliance is an issue of fact." *Id.* at 978. *See*

also In re Argo Communications Corp., 134 B.R. 776 (Bankr.S.D.N.Y.1991).

In the instant case, Defendants' contention that Plaintiff was on notice of the overpainting issue must be developed at trial. Moreover, without conceding that the Artwork was overpainted, Defendants cannot prove that Plaintiff had "actual notice" of that fact. The suspicions of one Museum representative, Bracht, does not amount to actual notice that the Artwork was, in fact, overpainted. Although both Bracht and Beeren were trained in the field of modern art, the Record does not reveal any instance in which either concluded that the Artwork was overpainted.

Finally, when Defendants were confronted with Bracht's concerns, they emphatically denied that the Artwork had been overpainted, allegedly verbally and in writing. (Beeren's Aff. ¶¶ 22–25, Ex. B, C). The issue of whether the City's reliance on these representations was justifiable in light of its suspicions is a question of fact.

■ Defendants' second contention is that the Complaint does not establish the element of the fraud cause of action requiring an injury to the plaintiff. The Complaint, however, does allege an injury as a result of Defendants' actions. The damage to the City and the public was alleged to be approximately 3.5 million dollars, (Compl. at ¶¶ 61–62), part of which is likely to be the fees paid to Goldreyer for the restoration. Although the Complaint does not further detail the individual aspects of the injury, enough is alleged to satisfy the injury element of the fraud claim.

■ Moreover, Defendants have inaccurately summarized several sections of the Record in their attempt to place monetary value on the Artwork. Contrary to Defendants' assertion, the Restoration Agreement never describes the Artwork as "in a state of virtual destruction." (Defs.' Mot. to Dismiss at 26). The Artwork is only described as having been slashed in specific areas. There is no mention in the Record of how the monetary value of the Artwork had been affected by this incident. Thus, Defendants' claim that the Artwork was "worthless" when turned over to Goldreyer is unsubstantiated

by the Record. Furthermore, and contrary to Defendants' claim, Beeren's Affidavit is silent as to whether another conservator was willing to attempt to restore the Artwork. (Defs.' Mot. to Dismiss at 26).

Defendants' third basis for dismissal of the fraud claim is based on a waiver of the claim. Defendants argue that the two signed releases by Museum representatives constitute a complete waiver of the fraud claim. Defendants rely on the state court findings on this question as dispositive.

As previously stated, however, the decision of the state court on a motion to dismiss is not a finding of fact on any disputed issue in that proceeding and cannot be given deference in this action. Although not expressly stated in Defendants' motion, it appears that they rely on the accord and satisfaction doctrine as providing a waiver of Plaintiff's claim. For the reasons previously stated, this reasoning fails.

■ Plaintiff alleges several specific acts in support of its fraud claim:

—that Goldreyer falsely told Ms. Dippel that the pinpointing technique would be utilized to restore the Artwork (Compl. ¶ 56);

—that Goldreyer failed to advise the City of his intent to overpaint the Artwork with the intent to deceive it (Compl. at ¶ 57);

—that Goldreyer and his attorney represented, with the intent to deceive, that the pinpointing restoration method had been utilized and that the Artwork had not been overpainted (Compl. at ¶ 58);

—that the City detrimentally relied on these alleged misrepresentations (Compl. at ¶¶ 59–60);

—that this reliance resulted in an injury to the City of 3.5 million dollars (Compl. at ¶¶ 61–62);

These assertions establish a prima facie case of fraud. Accordingly, Defendants' motion is denied.

## VII. NEGLIGENCE

Defendants seek dismissal of Plaintiff's fifth claim, negligence, pursuant to Federal Rule 12(b)(6). Defendants rely on affidavits submitted by two City employees, Beeren

and Bracht, in the separate state court action to support their claim. This Court has taken judicial notice of the state court action; however, as previously stated, the affidavits cannot be considered for their truth. Defendants also rely on the accord and satisfaction doctrine as a bar to Plaintiff's claim. Again, however, the applicability of this doctrine cannot be determined on a Rule 12(b)(6) motion.

■ In order to prove negligence in New York, Plaintiff must show that a legal duty existed and was owed by the defendants to the plaintiffs; a breach of that duty occurred; and an injury to the plaintiff was the proximate result of that breach. *Paulison v. Suffolk County*, 775 F.Supp. 50, 53 (E.D.N.Y. 1991).

■ Plaintiff has made a prima facie showing of negligence. Defendants owed a duty of care under the Restoration Agreement (Compl. at ¶¶ 17–18, 64); that duty was breached when Defendants allegedly overpainted the Artwork (Compl. at ¶ 65); such breach was the actual and proximate cause of injury to Plaintiff; and Plaintiff suffered monetary injury (Compl. at ¶¶ 65–66).

For these reasons, the motion is denied.

## VIII. NEGLIGENT MISREPRESENTATION

Plaintiff also alleges negligent misrepresentation on the part of Defendants. Defendants seek to dismiss this claim, alleging that the City did not justifiably rely on the representations made by Defendants, and that the City waived this claim. These arguments fail for the following reasons.

■ Under New York law, a party is liable for negligent misrepresentation if such misrepresentation "is made with the knowledge, notice, and expectation that another will rely upon it, and if the other party in fact relies on the statement to his detriment. There must also be some relationship of trust from which the defendant's duty to plaintiff arises." *Brown v. Stinson*, 821 F.Supp. 910, 914 (S.D.N.Y.1993). *See also Mallis v. Bankers Trust Co.*, 615 F.2d 68, 81 (2d Cir. 1980), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981) (Friendly, J.).

In the instant case, Defendants again rely on the "actual notice" theory as a barrier to Plaintiff's claim of justifiable reliance. For the reasons discussed earlier, this argument presents questions of fact that cannot be resolved on a motion to dismiss.

Defendants' second argument of a waiver is based on the two releases for the Artwork signed by the Museum representatives, again under the accord and satisfaction doctrine. The issues of fact surrounding the application of this doctrine make it inappropriate as the basis of this motion.

For these reasons, Defendants' motion is denied.

## IX. STAY OF PROCEEDINGS

Defendants move for a stay of this action pending the outcome of the state court action filed by Daniel Goldreyer in order to prevent duplicative litigation of the same ultimate issues of fact. Defendants also claim that this litigation was brought in bad faith by Plaintiff as a strike suit.

The court in *Inn Chu Trading Co., Ltd. v. Sara Lee Corp.*, 810 F.Supp. 501, 507–08 (S.D.N.Y.1992), identified six factors that are relevant to a determination of whether a federal court should stay its proceedings in favor of state court proceedings:

(1) the assumption by either court of jurisdiction over any res or property, (2) the inconvenience of the federal forum, (3) the avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained, (5) whether federal or state law supplies the rule of decision, (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

The Supreme Court discussed these factors in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Court stated that in deciding, under the exceptional circumstances test, whether to defer to a state court, the conclusion "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weight-

ed in favor of the exercise of jurisdiction." *Id.* at 16, 103 S.Ct. at 937. *See also Colorado River Water Conservation District v. United States,* 424 U.S. 800, 818–19, 96 S.Ct. 1236, 1247, 47 L.Ed.2d 483 (1976).

■ Defendants allege that piecemeal litigation will be avoided because the same ultimate issue is to be decided in each case: whether Goldreyer breached the Restoration Agreement. (Defs.' Reply Mem. at 30). Since the federal and state actions are based on different contracts, however, this claim cannot be true. The action before this court was brought by the City alleging a breach of the Restoration Agreement. The state court action, on the other hand, alleges that Beeren violated the terms of the Letter Agreement and Mutual Receipt by failing to publicly defend the restoration in the face of criticism. The substance of this claim is the alleged breach by Beeren (and Bracht), not a possible prior breach by Goldreyer. Thus, the Letter Agreement and Mutual Receipt are the relevant contracts to be examined in the state court action. Therefore, piecemeal litigation would not be avoided by a stay of the proceedings.

Moreover, the City's fraudulent inducement claim cannot be fully litigated in the state court action. There is information supplied by Beeren in his federal court affidavit that was not included in the state court affidavit that could have a substantial effect on the resolution of the fraud claim. For instance, the letter written by Goldreyer's attorney asserting that no overpainting had occurred would be significant evidence in proving an intentional misrepresentation occurred; this document is not present in Beeren's state court affidavit. A decision rendered on Plaintiff's fraud claim in the state court action without such evidence certainly would be prejudicial to the City's case, particularly if given collateral effect in this action.

For these reasons, this court finds that a comprehensive disposition of the litigation will not be achieved by a stay of the federal court proceedings. Therefore, Defendant's motion is denied.

## X. PUNITIVE DAMAGES

■ Defendants move to strike Plaintiff's punitive damages claim as improper pursuant to Federal Rule of Civil Procedure 12(f). Rule 12(f) states, in pertinent part, the following:

> Upon motion made by a party before responding to a pleading or ... upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed.R.Civ.P. 12(f). This Court must consider only the sufficiency of the punitive damages claim. New York courts generally do not allow punitive damages in breach of contract actions where a public right is not involved, but have made exceptions for cases involving fraud. Defendants rely heavily on the language of the New York Court of Appeals in *Walker v. Sheldon,* 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961): "[t]here may be a recovery of exemplary damages in fraud and deceit actions where the fraud, aimed at the public generally, is gross and involves a high degree of moral culpability." *Id.* at 405, 223 N.Y.S.2d 488, 179 N.E.2d 497. *See also Diker v. Cathray Construction Corp.,* 158 A.D.2d 657, 658, 552 N.Y.S.2d 37 (2d Dep't 1990). However, the applicability of punitive damages in breach of contract actions is not limited to public rights. *Roy Export Co. v. Columbia Broadcasting, Inc.,* 672 F.2d 1095, 1106 (2nd Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). *See also Borkowski v. Borkowski,* 39 N.Y.2d 982, 983, 387 N.Y.S.2d 233, 355 N.E.2d 287 (1976).

■ In the instant motion, Defendants allege that their actions, even as described by Plaintiff, do not meet the high standard of immorality and gross disregard for the other parties' rights set by *Walker,* rendering punitive damages inappropriate. Plaintiff, however, has properly alleged that Defendants knowingly misrepresented their actions with the intent to deceive. (Compl. at ¶¶ 15–16). Whether Defendants' statements are found to rise to the level described by Plaintiff is a

question to be decided at trial, not on a Rule 12(f) motion. Accordingly, Plaintiff's allegations are sufficient enough to support its request for punitive damages.

## XI. INSURANCE CLAIM

Defendants' final claim is that the failure of the City to obtain an insurance policy on the Artwork warrants dismissal of the Complaint. The basis of Defendants' argument is that the insurance coverage would have indemnified Defendants for any damage they allegedly perpetrated on the Artwork. Defendants cite no case law in support of their position, and this Court sees no merit in the argument.

■ The law concerning "all-risk" insurance policies is clear: the policy will protect against "all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." 70 N.Y.Jur.2d, Insurance § 1434 (italics added). *See M.H. Lipiner & Son v. Hanover Ins. Co.,* 869 F.2d 685, 687 (2nd Cir.1989). Specifically exempt from coverage, then, are losses resulting from misconduct or fraud. Plaintiff has put forth precisely these claims in its Complaint: fraud, intentional wrongdoing, and negligence. (Compl. at ¶¶ 15–16, 17, 12–13). If Plaintiff's claims are taken as true, the existence of insurance coverage would not have indemnified Defendants for their actions.

Defendants also contend that Goldreyer would have been indemnified on a finding of negligence and that that possibility is sufficient to dismiss the Complaint. Plaintiff, however, alleges gross negligence by Defendants in violating the terms of the contract through their fraudulent actions. This is not the type of negligence that is indemnified by insurance policies, even "all-risk" policies. *Finkelstein v. Central Mutual Ins. Co.,* 8 Misc.2d 261, 166 N.Y.S.2d 989, 993 (N.Y.Civ. Ct.1957) (only fraud or intentional wrongdoing or gross negligence such as deliberate disregard for plainly foreseeable consequences would defeat recovery for negligence). Even in the event that an insurer indemnifies Defendants under a negligence theory, the insurance company would still be entitled to pursue Goldreyer for his *intentional* wrongdoing.

Defendants' final contention is that even if the Court finds that an intentional tort was committed, there could be an exception for an unintended result where indemnification would be appropriate. Although this exception may exist in certain circumstances, there appears to be no possibility of an unintended result in the instant case. If Defendants intentionally painted over the work of the original artist as alleged, then the resulting submergence of his artistic expression and decline in value of the Artwork is a reasonably foreseeable result. This would lead to the denial of indemnification by the insurance company. Finally, Defendants have recourse to their own insurance policies for indemnification.

The existence of insurance coverage on the Artwork would not have altered Defendants' position in this proceeding because, accepting as true the allegations in the Complaint, Defendants would not have been indemnified for the damage to the Artwork.

Accordingly, this motion to dismiss the Complaint is denied.

## CONCLUSION

For the reasons detailed above, this Court DENIES Defendants' motion to dismiss in its entirety.

SO ORDERED.